## APPEAL OF LINDLAHR SANITARIUM, INC.

Docket No. 1619. Decided September 30, 1926.

Value of real estate determined for invested capital purposes.

*Edward Wm. Krueger*, C. P. A., and *John A. Stolp*, C. P. A., for the petitioner.

*B. H. Saunders*, Esq., for the Commissioner.

This is an appeal from the determination of a deficiency in income and profits tax for the fiscal years ended June 30, 1917, and 1918, in the aggregate amount of $1,159.91. The deficiency arose from the action of the Commissioner in reducing certain real estate values, resulting in a decrease of invested capital and depreciation.

The petitioner is an Illinois corporation, organized June 20, 1914, and operates a sanitarium.

Prior to June 20, 1914, Dr. Henry Lindlahr owned and operated a sanitarium, one branch of which was located at 525 South Ashland Boulevard, Chicago, and another branch at Elmhurst, Ill.

Lindlahr had owned these properties for a number of years. He had purchased them in depleted condition and remodeled and repaired them at great expense.

After the corporation was organized, Lindlahr addressed a communication to it in which he proposed to sell and convey to the corporation all the property and equipment used in said sanitarium, together with its good will, and specifically including the South Ashland Boulevard property and the Elmhurst property, for a consideration of $125,000, to be paid in stock of the corporation at par.

In that proposition it was specifically mentioned that said properties were encumbered by indebtednesses in the aggregate amount of $38,500, interest thereon, and unpaid taxes, which the corporation should assume and pay, together with all taxes due on said properties. That offer was formally accepted by the corporation.

On July 10, 1914, Lindlahr addressed a communication to the board of directors in which he proposed to transfer and surrender to the treasury of the corporation 400 shares ($100 par value) of the stock held by him in consideration of $1. It was explained that this action was taken on demand of C. J. Miller, who had agreed to purchase and pay cash for 100 shares ($100 par value) of preferred stock on condition that such action be taken. This proposition of Lindlahr was duly accepted and said stock was transferred to the treasury.

Instead of putting the entry in the journal for the $125,000 par value of stock as being Lindlahr's subscription, the bookkeeper did not enter the donation of $40,000 in stock but put in his subscription at a net figure of $75,000. The entry as shown on the journal is as follows:

```
1915.
March 1   Unsubscribed stock_____ $125,000
             To capital stock_____ $125,000
          To place upon the books of the Lindlahr Nature
          Cure Institutes the capital stock as follows:
               1,150 shares of common at $100_____ $115,000
               100 shares of 6% preferred at $100_   10,000
                                                     _____
                                                     125,000
          As per minutes of stockholders meeting of
          June 22, 1914.
```

March 1　Henry Lindlahr _____ $75,000
　　　　　　To unsubscribed stock_____ $75,000
　　　　　　　　To record his subscription to 750 shares of
　　　　　　　　　common stock at $100 per share par value
　　　　　　　　　as per minutes of ———.

There is no evidence of the assets and liabilities of the business at the time of the transfer to the petitioner, but the opening entries appear to be as of March 1, 1915. The assets and liabilities of the petitioner, as shown upon the books on that date, are as follows:

Assets:
　　Real estate_____ $129,000.00
　　Personal property_____ 16,492.24
　　Supplies_____ 786.28
　　Accounts receivable_____ 706.97
　　Merchandise_____ 441.40
　　Cash_____ 433.42
　　Unexpired insurance_____ 386.52
　　Bank discount_____ 267.33
　　Good will _____ 10,000.00
Liabilities:
　　Accounts payable_____ $1,419.07
　　Notes payable _____ 6,516.52
　　Mortgage interest accrued_____ 228.85
　　Interest accrued on notes payable_____ 123.90
　　Taxes accrued—
　　　　Chicago real estate_____ $80.00
　　　　Personal property_____ 4.89
　　　　Elmhurst real estate_____ 33.62
　　　　　　　　　　　　　　　　　　118.51　　　　118.51
　　Wendell State Bank of Chicago_____ 397.97
　　First National Bank of Elmhurst_____ 90.36
　　Henry Lindlahr (accounts payable)_____ 1,702.43
Mortgages payable—
　　　　Chicago real estate_____ $18,600
　　　　Elmhurst real estate_____ 18,700
　　　　　　　　　　　　　　　　　　37,300　　　　37,300.00
　　Henry Lindlahr (subscription)_____ 75,000.00
　　Surplus_____ 25,616.55
　　Real estate purchase (Elmhurst)_____ 10,000.00
　　　　　　　　　　　　　　　　　　158,514.16　158,514.16

Under date of June 30, 1918, a journal entry was made decreasing the real estate value by $67,181.99. The said journal entry is as follows:

Surplus _____ $67,181.99
　　To real estate_____ $67,181.99

For excess valuation on the Chicago and Elmhurst
buildings and grounds, estimated as follows:

| | | |
|---|---|---|
| Books show June 30, 1918_____ | | $147,181.99 |
| 525 Ashland Boulevard, actual cost_____ | $25,000.00 | |
| 515 Ashland Boulevard, actual cost_____ | 19,000.00 | |
| Elmhurst, actual cost_____ | 21,500.00 | |
| Improvement on Chicago property up to June 30, 1917, estimated at_____ | 7,500.00 | |
| Improvement on Elmhurst property up to June 30, 1917, estimated at_____ | 7,000.00 | |
| Actual cost is_____ | | 80,000.00 |
| Excess valuation _____ | | 67,181.99 |

In August, 1920, a journal entry was made partially restoring the
real estate values. The entry in the journal of the petitioner is as
follows:

GENERAL JOURNAL    CHICAGO    MONTH OF AUGUST    1920

Real Estate—Chicago:

| | |
|---|---|
| Buildings 525 Ashland Boulevard_____ | $18,000.00 |
| Ground_____ | 14,500.00 |
| | $32,500.00 |

To Surplus:

To partially offset Journal Entry on June 30, 1918,
as Real Estate should have been as follows:

| | Buildings | Ground | Total |
|---|---|---|---|
| Should have been_____ | 40,000 | 25,000 | 65,000 |
| Books show_____ | 22,000 | 10,500 | 32,500 |
| Difference _____ | 18,000 | 14,500 | 32,500 |

Real Estate—Elmhurst:

| | |
|---|---|
| Buildings_____ | 11,000.00 |
| Ground_____ | 9,500.00 |
| | 20,500.00 |

To Surplus:

To partially offset Journal Entry on June 30, 1918,
as Real Estate should have been as follows:

| | Buildings | Ground | Total |
|---|---|---|---|
| Should have been_____ | 30,000 | 19,000 | 49,000 |
| Books show_____ | 19,000 | 9,500 | 28,500 |
| Difference _____ | 11,000 | 9,500 | 20,500 |

Above two journal entries partially restore the origi-
nal valuation of buildings and grounds reduced by error
on June 30, 1918.

On June 1, 1924, the petitioner had an appraisal of its real estate made by valuation committees of the Chicago Real Estate Board and said properties were appraised, as of June 1, 1914, as follows:

For the property at 525 Ashland Boulevard:
    Land, exclusive of improvements_____ $25,000
    Improvements _____ 50,000
For the property at Elmhurst:
    Land_____ 16,000
    Improvements _____ 22,000

which the Board finds was the value of said properties on that date, subject to incumbrances, or a net value of $65,700.

OPINION.

LOVE: The controversy in this appeal is over the proper value to attribute to real estate for the purpose of computing invested capital. The record discloses that the petitioner's own valuations were vacillating. It appears that Dr. Lindlahr incorporated his business June 20, 1914. At this time he owned two pieces of real estate subject to certain incumbrances, as set forth in our findings of fact. At that time he put in all his real estate, good will, and business at $125,000. His total incumbrances were $47,300, including $10,000 due on the purchase price of the Elmhurst property. A short time thereafter, on July 10, 1914, desiring to interest outside capital, he turned back $40,000 par value of his stock into the treasury of the petitioner. One Miller thereupon purchased $10,000 of stock at par value, the proceeds of which were used to pay the balance due on the Elmhurst property. This transaction indicated that the parties regarded the total net value of the property to be $85,000. There does not seem to be any opening entry in the petitioner's journal until March 1, 1915, at which time there was entered in Lindlahr's stock account a net amount of $75,000. Journal entries of the same date place a value of $129,000 on the real estate, against which were $47,300 incumbrances, or a net value of $81,700. The value of the land and buildings was not segregated. The petitioner further complicates the situation by writing down the value of real estate on June 30, 1920, to the extent of $67,181.99, and in August, 1920, by restoring $53,000 of this decrease.

The retrospective real estate appraisal made by the Chicago Real Estate Board placed the total valuation of the real estate at $113,000 which, after subtracting the incumbrances which existed in 1914, would leave a net value of $65,700.

50144°—27——82

Under the circumstances, we are disposed to give full credence to the valuation placed upon these properties by the Chicago Real Estate Board. While retrospective appraisals are not usually given great weight as evidence, in this appeal the appraisers are supported by at least two members of the appraisal committee who subjected themselves to examination and cross examination and demonstrated the fact that personally each was sufficiently posted and properly qualified by experience to enable him to fix with fair accuracy the market value of the property at the date in question. One particular appraiser testified that he was personally familiar with the values and actual sales of similar property in the same locality as of June 1, 1914, and that the property could have been sold for cash at the values fixed.

> *Order of redetermination will be entered on*
> *15 days' notice, under Rule 50.*